UNITED STATES of America, Appellee,

v.

Julian COLON, Defendant–Appellant.

No. 1194, Docket 87–1043.

United States Court of Appeals, Second Circuit.

Argued June 2, 1987.

Decided Dec. 4, 1987.

Thomas P. Milton, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Richard Ware Levitt, New York City, for defendant-appellant.

Before NEWMAN, KEARSE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Julian Colon appeals from his conviction by a jury for the interstate transportation of stolen American Express traveler's checks in violation of 18 U.S.C. § 2314 (1982). Colon, an alien, was sentenced to a prison term of six years. The principal issue on appeal is whether Judge Bartels should have suppressed an inculpatory statement made by Colon while he was being driven to court for arraignment. Colon contends that his statement in Spanish to an American Express investigator was the result of an impermissible interrogation under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and of an unreasonable delay in his arraignment in violation of Fed.R.Crim.P. 5(a) and its statutory counterpart, 18 U.S.C. § 3501(c) (1982). Colon also claims that the district court erred in permitting the introduction of a prior consistent statement and that its charge diluted the government's burden of proof. Although the delay in Colon's arraignment troubles us, and we comment upon it, neither *Miranda* nor Section 3501 is applicable when, as here, the inculpatory statement is spontaneous and did not result from interrogation or its functional equivalent. *See* 18 U.S.C. § 3501(d) (1982). We also reject Colon's other contentions and therefore affirm the judgment.

## BACKGROUND

On the afternoon of Friday, May 30, 1986, about $65,000 in blank traveler's checks and several blank foreign exchange notes were stolen from the First Security Bank in Salt Lake City, Utah. Peggy Eaby, a teller, testified that Colon and Hernando Correa approached her cage where she kept blank traveler's checks in a box marked with an American Express label.

Colon was wearing a red and white tee-shirt and a baseball cap. Correa took a foreign note and a U.S. note from his pocket and began to speak in a foreign language. Eaby, who could not understand him, went to find assistance. By the time she returned, the two men had left. About fifteen minutes later, she realized that the traveler's checks and bank drafts were missing.

American Express officials informed FBI Special Agent Michael Keeley in New York that they believed the robbers were among a party of five persons traveling under the name "Rodriguez" on a flight to Kennedy International Airport. After the plane arrived at about 1:00 a.m., Saturday morning, Keeley arrested Correa, Hector Valbuena and Hector Perez. Colon, still wearing the red and white tee-shirt and a baseball cap, and a woman, Rubia Martinez, were walking ahead of the other suspects when they too were stopped by Port Authority police assisted by American Express investigators. Martinez was carrying a package of traveler's checks underneath her dress when she and Colon were arrested. Colon and Martinez were advised of their *Miranda* rights in both English and Spanish. Colon denied knowing Martinez or the others in the group. However, Colon was carrying five airline tickets, all bearing the name "Rodriguez."

At about 1:30 a.m., the five suspects were taken to the Port Authority Police airport office for routine processing by state authorities, as is customary when federal agents make arrests at Kennedy International. An officer again advised them of their *Miranda* rights. In response, Colon stated that he did not wish to make any statements without the presence of an attorney.

Colon and the four others were taken to the Metropolitan Correction Center ("MCC") in Manhattan around 5:30 a.m. Sometime later, perhaps around 9:00 a.m., Agent Keeley took the five suspects to the FBI offices in Manhattan for the usual processing, including the acquisition of pedigree and arrest information with the assistance of a Spanish interpreter. Fingerprinting and photographing also proceeded with only one fingerprint board and one photographer available. All the suspects were kept at FBI offices until each had been processed. Because this took several hours and the magistrate assigned to Saturday duty in the Eastern District was not available after noon, the five suspects could not be arraigned on Saturday. The magistrate directed that the suspects be returned to the MCC and brought to court on Monday for arraignment.

On Monday, June 2, at about 9:00 a.m., Detective Michael James and American Express Investigator Manuel Torres drove Colon from the MCC to the Eastern District courthouse in Brooklyn. During that car ride, Colon initiated a conversation in Spanish with Torres and told him that Martinez had nothing to do with the theft of the checks. Colon added that he had given the checks to Martinez after he had received them from Correa. At this point, Torres asked Colon only one question: whether Correa was the person in the yellow shirt, to which Colon responded, "yes." Torres then told Colon that he would bring Colon's cooperation to the prosecutor's attention.[1] Colon and the other four suspects arrived at the Eastern District courthouse at about 10:30 a.m. Arraignment of all the suspects was completed at 4:00 p.m.

At trial, additional evidence linked Colon to the crime and his travel companions. FBI Agent Thurman William, a government expert on fingerprints, identified five of Colon's fingerprints on the traveler's checks and bank drafts recovered from Martinez. The government also introduced two identification cards, bearing Colon's name and photograph, which were found in Martinez's purse. Finally, the government established that the serial numbers on the checks Martinez was carrying were the same as those on the checks stolen from the bank.

---

**1.** At the suppression hearing, Torres could not recall whether he had told Colon that his cooperation would result in a lesser bail or penalty. Torres did concede, after questioning by Judge Bartels, that he may have mentioned cooperation to Colon. At trial, Torres remembered that he had in fact told Colon that he would bring Colon's cooperation to the government's attention, but that he had done so only after Colon's statement, not before.

## DISCUSSION

We first consider whether the district court erred in not suppressing Colon's statement to Torres. Specifically, Colon contends that Torres' promise to bring Colon's cooperation to the prosecutor's attention turned the short car ride into "interrogation or its functional equivalent," and that the statement was the result of "extreme and unnecessary" delay in his arraignment.

■ It is undisputed that at the Port Authority office Colon explicitly refused to waive his *Miranda* right not to be questioned without the presence of counsel. Under such circumstances, any statements made to the police must be spontaneous and not the result of interrogation. *See Arizona v. Mauro,* —— U.S. ——, 107 S.Ct. 1931, 1934, 95 L.Ed.2d 458 (1987) (once an accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation ... unless the accused himself initiates further communication, exchanges, or conversations with the police") (quoting *Edwards v. Arizona,* 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). Interrogation was defined in *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980), as both express questioning and its "functional equivalent," including "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." (footnotes omitted).

■ Judge Bartels found that Colon's statement was spontaneous and not the product of an interrogation or its functional equivalent. We agree. Colon was not questioned, confronted with evidence, or even encouraged to be honest and tell the facts. Colon initiated the conversation, and Torres' reference to Colon's cooperation was made after Colon's inculpatory statement. *See United States v. Guido,* 704 F.2d 675, 677 (2d Cir.1983) (discussion of cooperation *prior* to inculpatory statement not equivalent of interrogation).

■ We turn now to whether Colon's statement is inadmissible because of an unreasonable delay in arraignment. Fed. R.Crim.P. 5(a) states that "any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041." Section 3501(c) provides in pertinent part:

a confession made or given by ... a defendant ... while ... under arrest ... shall not be inadmissible solely because of delay in bringing such person before a magistrate ... if such confession was made ... within six hours immediately following his arrest ...: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay ... beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

18 U.S.C. § 3501(c).

Judge Bartels admitted Colon's statement on the grounds that the weekend delay in Colon's arraignment was reasonable. We affirm on different grounds. Section 3501(d) states that "[n]othing contained in [Section 3501] shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation...." 18 U.S.C. § 3501(d). Inculpatory statements "made ... voluntarily ... without interrogation" are thus exempt from the procedural requirements of Section 3501. *See United States v. Bailey,* 728 F.2d 967, 970 (7th Cir.) (no voluntariness hearing pursuant to Section 3501(a) required for statement that did not result from interrogation), *cert. denied,* 467 U.S. 1229, 104 S.Ct. 2686, 81 L.Ed.2d 881 (1984); *United States v. Diezel,* 608 F.2d 204, 207 n. 6 (5th Cir. 1979) (same); *United States v. Bernett,* 495 F.2d 943, 972 (D.C.Cir.1974) (en banc) (Wilkey, J., concurring) (same). Section 3501(d) is designed to ensure that the statute not exclude incriminating statements unconnected with the delay in arraignment. *Cf. United States v. Perez,* 733 F.2d 1026 (2d Cir.1984) (statement product of interrogation just before arraignment after twen-

ty-three hour delay). Because Colon's statement was spontaneous and not the product of interrogation or its functional equivalent, it is therefore not excludable under Section 3501 even if the delay in arraignment was unreasonable.

We do state, however, our concern about the apparent indifference of the government to the requirement of Rule 5(a) that arrested persons be taken before a magistrate "without unnecessary delay." After the arrests, priority was given to processing by state authorities because the arrests had occurred in a Port Authority terminal. The timing of events thereafter is murky, partly because of the government's indifference to Rule 5(a)'s commands. The processing of the five defendants took all of Saturday morning, and, because the magistrate was not available in the afternoon, the arraignment did not occur until Monday. The government tells us that a delay of several hours for processing is "no surprise," Brief of Appellee at 27, in light of the need for translation and the lack of more photographers and fingerprint boards. However, the government gave no consideration to individual arraignments on Saturday morning but simply assumed that the defendants could not be transported individually to the Eastern District as the processing of each suspect concluded. No consideration was given to arraigning the defendants before processing was complete at FBI headquarters or to taking the defendants before a magistrate solely to have them informed of their rights by a judicial officer. Our comments are concededly dicta, and we state no conclusion as to what result we would reach had the statements in question been the product of an interrogation. Our decisions in the past with regard to Rule 5(a) have allowed the government considerable leeway. Nevertheless, we believe it inevitable that if the indifference to Rule 5(a) displayed in this case is routine practice, it will lead to the future exclusion of evidence.

■ Colon's remaining claims may be quickly dismissed. With regard to the prior consistent statement issue, defense counsel strongly contended at trial that Torres had fabricated Colon's inculpatory statement, as demonstrated by Torres' fail-

ure to prepare a written report. In response to that contention, the government asked Torres if he had told anyone else about the statement, to which Torres replied that he had told Agent Keeley, who in turn testified that he "took a statement" from Torres. It is the law in this circuit that:

> [A] prior consistent statement may be used for rehabilitation when the statement has a probative force bearing on credibility beyond merely showing repetition. When the prior statement tends to cast doubt on whether the prior inconsistent statement was made ... its use for rehabilitation purposes is within the sound discretion of the trial judge.

*United States v. Pierre*, 781 F.2d 329, 333 (2d Cir.1986); *see also United States v. Brennan*, 798 F.2d 581, 589 (2d Cir.1986) ("The question is not whether the defense introduces a specific statement, but rather whether it has made a specific attack on a witness's credibility."). Certainly, where, as here, only the fact rather than the substance of the prior statement is put before the jury for the limited purpose of refuting a claim that no incriminatory statement had been made, the admission of such evidence is not error.

■ We also reject Colon's challenge to one sentence of the district court's reasonable doubt charge that said the jury could convict upon evidence that "you would be willing to act and rely upon in the most important matters of your life." Colon claims that Judge Bartels should not have used a "willing to act" formulation, but should have told the jury what to do if they "hesitate to act." Colon also claims that the "willing to act" language used here was diluted by the omission of the phrase "without hesitation." It is true that we have expressed a preference for the "hesitate to act" language, finding that positive language of hesitation is helpful. *United States v. McBride*, 786 F.2d 45, 52 (2d Cir.1986). Nevertheless, Judge Bartels' charge stated at least fifteen times that the government must prove a defendant's guilt beyond a reasonable doubt. The charge included words of "hesitation." A "reasonable doubt" was defined by him as "a doubt based upon reason and common

32

sense, the kind of doubt that would make a reasonable person hesitate to act." Immediately after the sentence to which Colon objects, the court reminded the jury that "the burden is always upon the prosecution to prove guilt beyond a reasonable doubt" and that "this burden never shifts to the defendant." The district court's charge, read as a whole, therefore, affords no basis for reversal.

The judgment of conviction is affirmed.