COMMONWEALTH vs. JASON FORTUNATO.

Middlesex. April 4, 2013. - October 3, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

Practice, Criminal, Arraignment, Delay in commencement of prosecution, Motion to suppress, Admissions and confessions. Evidence, Admissions and confessions. Due Process of Law, Delay in commencement of prosecution.

This court concluded that suppression was required of a criminal defendant's statements made to police more than six hours after his arrest, where the statements were made as part of a continuing episode of police questioning, and the police did not seek or obtain a waiver by the defendant of his right to prompt arraignment. [504-509] IRELAND, C.J., concurring. SPINA, J. concurring in part, and dissenting in part, with whom CORDY and GANTS, JJ., joined.

INDICTMENTS found and returned in the Superior Court Department on December 17, 2009.

A pretrial motion to suppress evidence was heard by Leila R. Kern, J.

An application for leave to prosecute an interlocutory appeal was allowed by Spina, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Warren W. Lee, Assistant District Attorney (Jessica L. Noble, Assistant District Attorney, with him) for the Commonwealth.

John Fennel, Committee for Public Counsel Services, for the defendant.

BOTSFORD, J. The defendant stands indicted for armed robbery, G. L. c. 265, § 17, and being an habitual offender, G. L. c. 279, § 25. Citing Commonwealth v. Rosario, 422 Mass. 48, 56 (1996) (Rosario), a Superior Court judge allowed the defendant's

motion to suppress the admission of his prearraignment statements that were made more than six hours after arrest. The Commonwealth has appealed pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). We conclude that the six-hour rule set out in *Rosario*, which renders inadmissible statements made by an arrested defendant more than six hours after the arrest, applies to all the defendant's statements at issue in this appeal because all the statements were the product of police questioning to which the *Rosario* rule applies. We therefore affirm the suppression order, for reasons somewhat different than the judge.

*Background.* We summarize the facts the Superior Court judge (motion judge) found after an evidentiary hearing at which one police officer testified, supplemented by uncontested facts in the record. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007), *S.C.*, 450 Mass. 818 (2008).

On February 19, 2008, a man entered a bank in Reading, stated that he had a gun, and demanded that the bank teller give him money. He fled with a substantial amount of cash, but bank security cameras photographed his image. Detective Michael Saunders of the Reading police department was assigned to investigate the bank robbery. On November 17, 2009, after receiving information that the defendant was a participant in the robbery, Saunders and State Trooper Shawn O'Neil traveled to Albany, New York, and spoke to the defendant, who had been released from a New York prison the previous day and was meeting with his New York parole officer. At that time, Saunders and O'Neil told the defendant that he was a suspect in the Reading bank robbery, administered Miranda warnings, and recorded the interview.[1] The defendant told the officers he would speak to them when he returned to Massachusetts.[2]

Two days later, on November 19, 2009, Saunders and O'Neil

---

[1]While showing the defendant a photograph taken by a security camera in the Reading bank as well as photographs taken during two other bank robberies, Detective Michael Saunders and Trooper Shawn O'Neil told the defendant that they thought he had robbed all three banks.

[2]The defendant's motion sought to suppress these November 17, 2009, statements made to the police in New York as well as the statements he made on November 19 while being held in custody at the Reading police station. The Superior Court judge who heard the defendant's suppression motion (motion

arrested the defendant in Medford at 4:10 P.M. The defendant was transported to the Reading police department, arriving approximately one hour later. The officers did not inform the defendant of his right to a prompt arraignment at any point during or after his arrest. During booking procedures, which occurred at approximately 6 P.M., police read the Miranda warnings to the defendant, who acknowledged in writing that he had received them. Saunders then brought the defendant to an interview room to be questioned and again administered Miranda warnings. The defendant declined to speak to the police, and he was returned to a holding cell in the police station.

At approximately 10:30 P.M., more than six hours after he was arrested, the defendant indicated that he wished to speak to Saunders. Saunders went downstairs to the defendant's cell. When he arrived, Saunders did not say anything to the defendant about the defendant's right to prompt arraignment or, it appears, provide the defendant with any type of prompt arraignment waiver form. Nor did Saunders readvise the defendant of his Miranda rights. Upon Saunders's arrival, the defendant first asked whether the charges against him were final and then, according to Saunders, the following interchange took place, which we set forth in colloquy form:

> THE DEFENDANT: "Hypothetically speaking, aren't tellers trained to hand over the money during a robbery?"
>
> THE DETECTIVE: "Yes, I would believe that tellers are trained to not risk harm to themselves and give the money."
>
> THE DEFENDANT: "Well, what would happen if, hypothetically speaking, the person said he did not have a weapon or did not mention a weapon?"
>
> THE DETECTIVE: "The teller stated that you said you had a weapon."
>
> THE DEFENDANT: [shakes his head]
>
> THE DETECTIVE: "That's what you get an attorney for, to cross-examine the teller."

judge) denied it with respect to the November 17 statements. The defendant apparently did not appeal from that denial.

THE DEFENDANT: "Well, this isn't going to trial, I can plead guilty. I've pled guilty before."[3]

According to his own testimony, Saunders was aware from the outset of this 10:30 P.M. interchange that the defendant wanted to discuss the robbery charge, and Saunders himself considered the interchange to be an "interview."

The motion judge found that the defendant's statements on November 19, 2009 (November 19 statements), were inadmissible because *Rosario* established "a bright-line rule giving the police a 'safe harbor' period to question a suspect regardless of when court is in session, but not after that," and although this court had recognized that in "exceptional circumstances," the rule may be waived or modified, such an exception was limited and did not apply in the present case. The judge did not decide whether, as the Commonwealth argued, the defendant's November 19 statements were spontaneous and unsolicited, because in her view, the *Rosario* rule applied to bar admission of any and every statement by an arrested defendant if made beyond the rule's six-hour safe harbor period — that is, without distinction as to whether the statement was the product of police interrogation or was instead spontaneous or volunteered.[4] Accordingly, she allowed the defendant's motion to suppress the November 19 statements.

The Commonwealth applied for leave to prosecute an interlocutory appeal pursuant to Mass. R. Crim. P. 15 (a) (2). A single justice allowed the application and referred the case to the Appeals Court. We transferred the case to this court on our own motion. The Commonwealth continues to press its claim, advanced below, that the *Rosario* rule does not, or in any event, should not apply to preclude admission of the defendant's November 19 statements because they were unsolicited, spontaneous remarks that fall outside of it. The Commonwealth's claim raises an important issue about the scope of the *Rosario* rule, but we need not consider it in this case because we conclude

---

[3] The judge interpreted this statement to mean "he would plead out before trial, having previously pled out to crimes he did not commit."

[4] The defendant did not argue, and the judge did not consider whether the defendant's statements were voluntary under *Miranda* v. *Arizona*, 384 U.S. 436 (1966) (*Miranda*).

that the defendant's November 19 statements in their entirety were the product of "police questioning of an arrested person," *Rosario*, 422 Mass. at 56, and thus came squarely within the ambit of the rule.

*Discussion.* The *Rosario* case establishes a rule that a statement made by a person under arrest, if made within six hours of the arrest, is not subject to suppression because of delay in arraignment, but if the statement is made beyond six hours after the arrest, it will be inadmissible in evidence, absent a valid waiver of the person's right to timely presentment to a court for arraignment. *Rosario*, 422 Mass. at 56.[5]

The *Rosario* rule seeks, among other goals, to provide for more effective implementation of a defendant's right to prompt arraignment or presentment[6] and the additional rights that prompt

---

[5]This court in *Commonwealth* v. *Rosario*, 422 Mass. 48, 56-57 (1996) (*Rosario*), stated the rule as follows:

> "We adopt for the future, with respect to police questioning of an arrested person, a rule similar to those in the Federal and the Pennsylvania systems discussed above. An otherwise admissible statement is not to be excluded on the ground of unreasonable delay in arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay. This rule will (a) largely eliminate debate over the reasonableness of any delay, (b) bar admission of a statement made after the six-hour period unless there is a waiver of prompt arraignment, and (c) apply without regard to when either the court is in session or the arrest made. . . . We will depend on the requirements of Miranda warnings, voluntariness, and the requirements of G. L. c. 276, § 33A [right to telephone call], to protect against unfair or coercive questioning during the six hours after arrest. The six-hour period itself will place an outside limit on any incentive to question an unwilling arrestee. If, when arrested, the person is incapacitated because of a self-induced disability . . . [or] for reasons not attributable to the police, such as a natural disaster or emergency, interrogation during the six-hour period is not possible or must be suspended, the six-hour period should be tolled appropriately. It is most important to recognize that, but for the exceptions just noted, the period of safe harbor questioning commences on arrest and concludes six hours later without regard to when court is in session."

[6]The right to prompt arraignment is codified in Mass. R. Crim. P. 7 (a) (1), as amended, 461 Mass. 1501 (2012), which provides in relevant part: "A defendant who has been arrested and is not released shall be brought for arraignment before a court if then in session, and if not, at its next session."

presentment protects.[7] It is a prophylactic rule, see *Commonwealth* v. *Siny Van Tran*, 460 Mass. 535, 561 (2011), designed to establish "as clear a rule as possible" in this area, and it applies, at a minimum, to statements made by an arrestee that are the product of police questioning. *Rosario*, 422 Mass. at 53. To that end, the rule sets out an unambiguous temporal boundary line to demarcate when an arrested defendant's otherwise voluntary statements will be admissible, and when they will not. This court established the *Rosario* rule because "[p]olice, trial judges, prosecutors, and defense counsel are entitled to as clear a rule as possible concerning both the right of the police to question an arrested person and the standard for suppressing statements made by a defendant after arrest and before arraignment." *Id.* Our conclusion that such a rule was necessary stemmed from our recognition that the past rule, which defined the duty to arraign a defendant "as soon as is reasonably possible," *id.* at 51, often "involve[d] a measure of uncertainty and the likelihood of uneven application in practice." *Id.* at 54. See *Commonwealth* v. *Butler*, 423 Mass. 517, 523-524 (1996). In contrast to this somewhat amorphous standard, we saw the bright-line *Rosario* rule as being able to "(a) largely eliminate debate over the reasonableness of any delay, (b) bar admission of a statement made after the six-hour period unless there is a waiver of prompt arraignment, and (c) apply without regard to when either the court is in session or the arrest was made." *Rosario, supra* at 56.

The Commonwealth argues the *Rosario* rule has no application here because its purpose is to eliminate incentives for police pressure on defendants through questioning, and the defendant's November 19 statements were all spontaneous,

---

[7]This court has described these rights as follows:

> "[T]he rule of prompt presentment is designed to facilitate the defendant's right to counsel, provide the defendant with a recitation of the charges against him by a member of the judiciary, and ensure that the defendant's detention is not unlawful. . . . In a less direct manner, the rule, recognizing the coercive nature of a lengthy interrogation, provides the court with an additional assurance (over and above the assurance supplied by compliance with the requirements of *Miranda*, [384 U.S. 436]) that statements made by the defendant after arrest but before presentment are free, intelligent, and voluntary."

*Commonwealth* v. *Butler*, 423 Mass. 517, 523 (1996).

unsolicited "remarks," rather than the product of police interrogation. We disagree with both points. First, as discussed, the rule of prompt arraignment underlying the *Rosario* rule serves a broader purpose than only protecting against unwarranted police pressure on arrested persons to talk; the rule also is intended to facilitate a criminal defendant's right to counsel, to ensure that a defendant receives a prompt statement by a judge or magistrate of the charges against him, and to prevent unlawful detention. *Butler*, 423 Mass. at 523. See note 7, *supra*. Moreover, the *Rosario* rule itself is designed first and foremost to address the need to give clear, unambiguous guidance to police (among others) concerning their right to question a defendant under arrest as well as the standards for suppressing statements made by such defendants. *Rosario*, 422 Mass. at 53.

Second, with respect to the defendant's November 19 statements, it is necessary that they be viewed in the context in which they were made, and while keeping in mind that the purposes of the *Rosario* rule are best served by taking a realistic view of what constitutes police questioning. On November 19, 2009, as of 10:30 P.M., the defendant (1) had been arrested and taken into custody over six hours earlier, (2) had been interrogated, albeit unsuccessfully, by Detective Saunders approximately four hours earlier;[8] (3) remained in the custody of the same police department in the same police station without arraignment or indeed any intervening event; and (4) was asking to speak again specifically to Saunders, the same interrogating detective. Additionally, Detective Saunders was "immediately aware" at the outset of the 10:30 P.M. interchange that the defendant wanted to discuss the robbery charge, and considered the interchange to be an "interview." Considering all these facts together, it is clear that the entire 10:30 P.M. conversation between the defendant and Saunders was an integral part of a single episode of police questioning, and subject to the six-hour time limitation imposed by the *Rosario* rule.[9]

In support of its opposing view, the Commonwealth cites

---

[8]The attempt by Saunders to interview the defendant after he was booked on November 19, 2009, was a sequel to Saunders's first unsuccessful effort to question the defendant in New York on November 17.

[9]Contrary to the view of the dissent, see *post* at 512-513, we do not suggest

Federal statutory and decisional law, and argues that these authorities support the position that the 10:30 P.M. interchange between the detective and the defendant on November 19, 2008, did not fall within the scope of "police questioning," but rather represented a series of unsolicited, volunteered remarks by the defendant to which *Rosario* has no application. In particular, the Commonwealth points to 18 U.S.C. § 3501 (2006), which was enacted by Congress in 1968 in relevant part to limit what is known as the *McNabb-Mallory* rule,[10] that made inadmissible in Federal cases a confession of an arrested and detained defendant if it is made while the defendant is being detained for an unreasonable period of time before being brought before a magistrate, in violation of the prompt arraignment requirement of Fed. R. Crim. P. 5(a)(1)(A). See *Corley* v. *United States*, 556 U.S. 303, 322 (2009). See also *Rosario*, 422 Mass. at 55 (discussing *McNabb-Mallory* rule and § 3501). Section 3501(c) establishes a flexible presumption that a prearraignment statement by an arrested and detained defendant made more than six hours after arrest will not be admissible, but § 3501(d) provides in part that the otherwise generally applicable six-hour limitation in § 3501 will not prohibit the admission in evidence "of any confession made or given voluntarily by any person to any other person without interrogation by anyone." The Commonwealth references two decisions in which the United States Court of Appeals for the Second Circuit has interpreted § 3501(d) to mean that if a defendant's postarrest but prearraignment statements were spontaneous and not the product of "interrogation or

here that the definition of what constitutes "police questioning" is different under *Rosario* than it is under *Miranda*, 384 U.S. at 444. But in evaluating an interchange between a defendant and the police, the context, and more particularly the purpose, of the inquiry is important. In this case, the inquiry's purpose is not, as it was in *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980), to determine whether the defendant's Miranda rights were honored or whether in any event his statements were voluntarily made; as *Rosario* makes clear, that is a separate question. *Rosario*, 422 Mass. at 53, 56. Rather, the purpose is to determine whether the police questioning implicates the broad prophylactic rule established in *Rosario* to actualize the right to prompt arraignment — a separate right that has several purposes, see note 7, *supra*, but also had a history of inconsistent enforcement. See *Butler*, 423 Mass. at 523-524; *Rosario*, *supra* at 53-54.

[10]See *Mallory* v. *United States*, 354 U.S. 449 (1957); *McNabb* v. *United States*, 318 U.S. 332 (1943).

its functional equivalent," see *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301 (1980),[11] then even unreasonable delay in bringing the defendant before a magistrate for arraignment would not result in suppression of the statements. See *United States* v *Fullwood*, 86 F.3d 27, 31 (2d Cir.), cert. denied sub nom. *Poindexter* v. *United States*, 519 U.S. 985 (1996) (*Fullwood*); *United States* v. *Colon*, 835 F.2d 27, 31 (2d Cir. 1987), cert. denied, 485 U.S. 980 (1988) (*Colon*). In the Commonwealth's view, the defendant's November 19 statements, in terms of being unsolicited and volunteered, are similar to those at issue in these two Second Circuit cases. We are not persuaded. Quite apart from the fact that the Massachusetts Legislature has not enacted any statute comparable to § 3501(d) in an effort to limit or modify our *Rosario* rule, the factual circumstances presented in the Federal decisions on which the Commonwealth relies are very different from this case. See *Colon*, 835 F.2d at 29, 30-31.[12] See also *Fullwood*, 86 F.3d at 30-31.[13]

---

[11]*Rhode Island* v. *Innis*, 446 U.S. at 301, defines "interrogation or its functional equivalent" to mean express questioning by the police as well as "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect."

[12]In *United States* v. *Colon*, 835 F.2d 27, 29 (2d Cir. 1987), cert. denied, 485 U.S. 980 (1988) (*Colon*), the defendant was charged with the theft of American Express traveler's checks under a Federal criminal statute. He was arrested and taken into custody on a Saturday morning, but not arraigned until the following Monday morning. *Id.* Driving to the courthouse on Monday morning, the defendant initiated conversation in Spanish with an American Express investigator who was accompanying the police, and in the conversation, the defendant made inculpatory statements about the charged crime. *Id.* The court held that the defendant's statements were "made . . . voluntarily . . . without interrogation" within the meaning of 18 U.S.C. § 3501(d) (2006), and thus were not subject to suppression under the presumptive six-hour rule in 18 U.S.C. § 3501(c) (2006) because of the delay in arraignment. *Colon, supra* at 30-31.

[13]In *United States* v. *Fullwood*, 86 F.3d 27, 29 (2d Cir.), cert. denied sub nom. *Poindexter* v. *United States*, 519 U.S. 985 (1996) (*Fullwood*), the defendant was arrested on a Federal charge and taken into custody but not arraigned until two days later. While in custody, the defendant asked to speak to State police officers, and did so. *Id.* During his interview with the State officers, the defendant made inculpatory statements about the Federal crime. The court held that the defendant's statements fit within 18 U.S.C. § 3501(d), because they were voluntarily made and "*were not the product of interrogation in the sense that they were solicited from an unwilling participant*" (emphasis added), and therefore 18 U.S.C. § 3501(c)'s presumptive rule of suppression

In summary, we hold that the defendant's November 19 statements were made as part of a continuing episode of "police questioning" within the meaning of *Rosario*, 422 Mass. at 56, and therefore are subject to the *Rosario* rule. Because the statements were made more than six hours after the defendant's arrest, and because the Reading police did not seek or obtain a waiver by the defendant of his right to prompt arraignment,[14] the motion judge correctly ordered the suppression of the November 19 statements in their entirety. We do not need to, and do not, consider in this case whether the *Rosario* rule applies to a defendant's unsolicited or volunteered statements (i.e., those that are not the product of police questioning) made more than six hours after he has been arrested. That issue is left for another day.

*Conclusion.* The order allowing the defendant's motion to suppress his November 19, 2009, statements is affirmed. The case is remanded to the Superior Court for further proceedings.

*So ordered.*

IRELAND, C.J. (concurring). I agree with the court's conclusion that the defendant's prearraignment statements were a product of police questioning and the allowance of the motion to suppress the statements must be affirmed. In my view, the same result would occur even if the statements were not the product

when arraignment occurs more than six hours after arrest was not triggered. *Id.* at 31-32.

The facts of the *Fullwood* case seem closer to the facts of this case than do those of the *Colon* case in the sense that, as here, the defendant in *Fullwood* asked to speak to the police. However, we do not agree with the court's apparent view in *Fullwood* that a defendant's statements are the product of police "interrogation" only when the defendant is unwilling to participate in the interview.

[14]At no time — not at booking, during the aborted interrogation around 6 P.M., or when Saunders responded to the defendant's holding cell at 10:30 P.M. — did the police seek a waiver from the defendant of his right to prompt presentment. There is nothing in the record to suggest that the Reading police, including Detective Saunders when he was asked to go to the defendant's holding cell at 10:30 P.M. in response to the defendant's request, did not have time to locate and present the defendant with a *Rosario* waiver form that we assume the Reading police department had available.

of police questioning because *Commonwealth* v. *Rosario*, 422 Mass. 48 (1996), correctly read, requires the exclusion of all statements made to police more than six hours after arrest, absent a waiver of the right to prompt arraignment.

The motion judge correctly determined that admitting the statements would contravene the bright-line rule that "[a]n otherwise admissible statement is not to be excluded on the ground of unreasonable delay in arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay." *Id.* at 56. This rule, which "clarif[ies] the ground rules for custodial interrogation in order to preserve the prompt presentment required by Mass. R. Crim. P. 7[, as amended, 461 Mass. 1501 (2012)]," *Commonwealth* v. *Rosario, supra* at 58-59 (Liacos, C.J., dissenting), applies to all statements regardless whether they were a response to interrogation.

SPINA, J. (concurring in part and dissenting in part, with whom Cordy and Gants, JJ., join). The court concludes that all of "the defendant's November 19 statements were made as part of a continuing episode of 'police questioning,' " and thus that they are inadmissible under *Commonwealth* v. *Rosario*, 422 Mass. 48, 56-57 (1996) (*Rosario*)." *Ante* at 509. I agree that the defendant's statements made after the officer said, "The teller stated that you said you had a weapon," were the product of police questioning. By redirecting the defendant's hypothetical questions to the circumstances of the crime for which the defendant was held, the officer was attempting to elicit information about the crime from the defendant. See *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980); *Commonwealth* v. *Torres*, 424 Mass. 792, 797-798 (1997). Thus, I agree with the court that this portion of the exchange must be excluded pursuant to *Rosario*, because it was outside the six-hour safe harbor and the officer did not obtain the defendant's waiver of his right to a prompt arraignment.

I disagree with the court that the defendant's uninvited hypothetical questions were the product of police questioning. *Ante* at 509. Having reached this conclusion, I next consider the question the court does not reach, *id.*: whether the exclusionary

rule of *Rosario* bars the admission of statements that are not the product of police questioning. I would hold that it does not. Consequently, I would reverse the order allowing the defendant's motion to suppress his hypothetical questions.

1. *Police questioning.* We have stated that custodial "interrogation," or "questioning," "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Commonwealth* v. *Torres, supra* at 796, quoting *Rhode Island* v. *Innis, supra* at 300. Questioning may take the form of "either express questioning or its functional equivalent," and "includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *Commonwealth* v. *Torres, supra* at 797, quoting *Rhode Island* v. *Innis, supra* at 300-301. See *Commonwealth* v. *Braley,* 449 Mass. 316, 323-324 (2007). We have stated repeatedly that statements initiated spontaneously and voluntarily by a defendant are not the product of police questioning. See *Commonwealth* v. *Koumaris,* 440 Mass. 405, 409 (2003); *Commonwealth* v. *Duguay,* 430 Mass. 397, 401 (1999); *Commonwealth* v. *Diaz,* 422 Mass. 269, 271 (1996). We have held that no police questioning occurs, even where a defendant initiates a conversation after asking specifically to speak to a police officer. See *Commonwealth* v. *Koumaris, supra*; *Commonwealth* v. *Diaz, supra.* See also *United States* v. *Fullwood,* 86 F.3d 27, 31-32 (2d Cir.), cert. denied sub nom. *Poindexter* v. *United States,* 519 U.S. 985 (1996). We also have determined that a defendant is not subject to police questioning where his or her statements follow certain neutral statements by a police officer. See *Commonwealth* v. *Koumaris, supra* (no interrogation where defendant confessed after officer said, "Go ahead. Tell me what you got to say"); *Commonwealth* v. *Diaz, supra* (no interrogation where "detective's response . . . seems to have been a natural reflex action . . . invited by the defendant's . . . statement"); *Commonwealth* v. *Ferrer,* 68 Mass. App. Ct. 544, 547 (2007) (no interrogation where officer "was responsive purely to the subject raised by the defendant"). The defendant's hypothetical questions are comparable to statements that we have determined are not the product of police questioning. See,

e.g., *Commonwealth* v. *Koumaris*, *supra*. Accordingly, I would conclude that the defendant's hypothetical questions are also not the product of police questioning.

Here, Officer Saunders attempted to interview the defendant at 6 P.M., but was unsuccessful; the defendant indicated his unwillingness to speak, and so was returned to his cell. At 10:30 P.M., a mere twenty minutes after the six-hour window following his arrest at 4:10 P.M. expired, the defendant asked to speak with Officer Saunders and then posed two, unprompted hypothetical questions. See *Commonwealth* v. *Koumaris*, *supra*; *Commonwealth* v. *Duguay*, *supra*; *Commonwealth* v. *Diaz*, *supra*. See also *Commonwealth* v. *Brum*, 430 Mass. 103, 115 (2002). Officer Saunders responded to the first question in the form of a neutral, declarative statement on the topic introduced by the defendant. See *Commonwealth* v. *Koumaris*, *supra* at 409 & n.5 (no interrogation where officer makes declarative, not interrogative, statement). See also *Commonwealth* v. *Ferrer*, *supra*. In initiating the conversation with Officer Saunders and then posing two uninvited hypothetical questions, the defendant was not "subjected to either express questioning or its functional equivalent," *Commonwealth* v. *Torres*, *supra*, quoting *Rhode Island* v. *Innis*, *supra*. There is nothing on these facts to suggest that the police delayed the defendant's arraignment, or engaged in any other coercive conduct, to obtain information from the defendant. See *Commonwealth* v. *Butler*, 423 Mass. 517, 526 (1996). Thus, the hypothetical question portion of the defendant's volunteered exchange with Officer Saunders was not the product of police questioning.

The court states that "the purposes of the *Rosario* rule are best served by taking a realistic view of what constitutes police questioning." *Ante* at 506. It should be axiomatic that the test for evaluating what constitutes police "questioning" or "interrogation" while in custody is the same under *Miranda* v. *Arizona*, 384 U.S. 436 (1966) (*Miranda*), as it is under *Rosario*. However, the court applies a more generous test in the *Rosario* context as to the meaning of the words "questioning" and "interrogation." Notwithstanding its assertion that the test is not different, the court explains precisely, in note 9, *ante*, how the meaning of these words now differ in the *Miranda* and *Rosario* contexts.

The court's analysis is not faithful to our jurisprudence, and it brings confusion where there should be clarity.[1] The relevant inquiry to determine whether the police engaged in custodial "questioning" or "interrogation" is to ask "whether an objective observer would infer that [the police conduct] was designed to elicit an incriminating response." *Commonwealth* v. *Ferrer*, *supra* at 546, quoting *Commonwealth* v. *Chadwick*, 40 Mass. App. Ct. 425, 427 (1996). A defendant cannot possibly be subject to custodial interrogation where he is simply detained until the next available court session and voluntarily initiates an unsolicited exchange with a police officer, who previously was in another room altogether.

2. *Application of* Rosario *in the absence of police questioning.* My conclusion that the defendant's unprompted hypothetical questions are not the product of police questioning does not answer the question whether they are admissible because they were made more than six hours after the defendant's arrest. Thus, I reach the issue whether *Rosario* works to exclude even a defendant's unprompted and spontaneous statements that are not the product of police questioning. Unlike Chief Justice Ireland, *ante* at 509-510 (Ireland, C.J., concurring), I conclude that it does not. "A primary evil which prompted the develop-

---

[1] Under the court's analysis, what distinguishes a statement that is blurted out from a statement made in response to police questioning is unclear: If Officer Saunders had simply been walking by the defendant's cell (as opposed to being "summoned") when the defendant posed the hypothetical questions, would there have been police questioning? If the defendant had not asked for Officer Saunders, and another police officer responded to the defendant's call, would police questioning have occurred then? In fact, the court's reasoning seems to suggest that police questioning never actually comes to an end prior to arraignment, even where, as here, there is an unsuccessful interview attempt and the defendant is returned to his cell.

The court is clearly influenced in its outcome by the fact that Officer Saunders did not seek a waiver from the defendant of his right to a prompt arraignment. Officer Saunders had no reason to bring a waiver form when he responded to the defendant's request to speak with him; contrary to the court's statement, Officer Saunders was not " 'immediately aware' at the outset of the 10:30 P.M. interchange that the defendant wanted to discuss the robbery charge." *Ante* at 506. Saunders only became aware that the defendant wanted to discuss the charges after the defendant asked whether the charges against him were final. At that point, Officer Saunders had no opportunity to obtain a written waiver: the defendant launched immediately into his hypothetical questions.

ment of the exclusionary rule was a recognition of the coercive environment that can be established by protracted custodial questioning." *Commonwealth* v. *Duncan*, 514 Pa. 395, 404 (1987) (*Duncan*), overruled by *Commonwealth* v. *Perez*, 577 Pa. 360, 374 (2004) (*Perez*). Because I agree with the Pennsylvania Supreme Court that "there was never an intent to have the rule rigidly applied without regard to its purpose of discouraging coercive interrogation," I respectfully dissent. *Perez, supra* at 367.

a. *Development of prompt arraignment law.* I first chronicle the development of the law governing the admissibility of a defendant's statements after arrest but before arraignment in the Federal and Pennsylvania State systems. The law in these jurisdictions holds particular relevance, as we looked to it in fashioning our six-hour safe harbor in *Rosario, supra* at 55-56.

The requirement that a defendant be arraigned promptly existed at Federal common law. *Corley* v. *United States*, 556 U.S. 303, 306 (2009) (*Corley*). This "presentment" obligation was intended to reduce the opportunity and incentive for excessively long detention. *Id.* Notwithstanding statutory codification of the prompt presentment requirement, Federal prosecutions lacked a mechanism of enforcement prior to the Supreme Court's 1943 decision in *McNabb* v. *United States*, 318 U.S. 332, 344-345 (1943) (*McNabb*). See *Corley, supra* at 306-307. In *McNabb, supra* at 345-347, the Supreme Court held that confessions obtained as a result of protracted interrogations, several of which lasted for days, were inadmissible.[2] Responding to uncertainty whether *McNabb* applied equally to voluntary as to involuntary confessions, the Supreme Court, in *Upshaw* v. *United States*, 335 U.S. 410, 412-413 (1948), clarified that *McNabb*, and the recently enacted Fed. R. Crim. P. 5(a) (1946) (requiring presentment "without unnecessary delay"), worked to suppress even voluntary confessions where there was a violation of the prompt presentment requirement. *Corley, supra* at 308. In *Mallory* v. *United States*, 354 U.S. 449, 455-456 (1957) (*Mallory*), the Supreme Court held that a confession obtained after six hours of interrogation was inadmissible. There, the Court

---

[2]As we noted in *Commonwealth* v. *Rosario*, 422 Mass. 48, 55 & n.5 (1996) (*Rosario*), the exclusionary rule now known as the *McNabb-Mallory* rule is not constitutionally based, and applies only in Federal prosecutions.

explored the issue what constitutes "unnecessary delay" in presentment and explained that "delay must not be of a nature to give opportunity for the extraction of a confession." *Id.* at 455. See *Corley, supra,* citing *Mallory, supra* ("delay for the purpose of interrogation is the epitome of 'unnecessary delay' "). Thus, what is now known as the *McNabb-Mallory* doctrine "generally render[s] inadmissible confessions made during periods of detention that violated the prompt presentment requirement of Rule 5(a)."[3] *United States* v. *Alvarez-Sanches,* 511 U.S. 350, 354 (1994). See W.R. LaFave, J.H. Israel, & N.J. King, & O.S. Kerr, Criminal Procedure § 6.3(a), at 649-652 (3d ed. 2007).

In 1968, Congress enacted 18 U.S.C. § 3501 (2006) in an effort to limit the application of the exclusionary rule of *McNabb-Mallory. Corley, supra* at 306. The legislative history of § 3501 indicates an initial interest in abolishing the *McNabb-Mallory* rule in its entirety, but an eventual decision to retain it, albeit in limited form, to discourage intentional delays in presentment for the purpose of eliciting information from a defendant. See *Corley, supra* at 318-319. Title 18 U.S.C. § 3501(c)[4] provides that voluntary confessions given within six hours of a suspect's

---

[3]While some States have adopted a version of the *McNabb-Mallory* doctrine, "[t]he vast majority of state courts passing on the question [how to discourage excessive interrogation] have rejected *McNabb-Mallory* outright, opting instead for a traditional due process voluntariness test of the admissibility of confessions." W.R. LaFave, J.H. Israel, & N.J. King, & O.S. Kerr, Criminal Procedure § 6.3(c), at 657 (3d ed. 2007), quoting *Johnson* v. *State,* 282 Md. 314, 324 (1978). See *Commonwealth* v. *Perez,* 577 Pa. 360, 369 & n.5, 370 (2004) (*Perez*). For a discussion of the varying law on the admissibility of a defendant's statements where there is a violation of the prompt arraignment requirement, see generally R.P. Eclavea, Admissibility of Confession or Other Statement Made by Defendant as Affected by Delay in Arraignment — Modern State Cases, 28 A.L.R. 4th 1121 (1984 & Supp. 2013).

[4]Title 18 U.S.C. § 3501(c) states that "*a confession* made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, *shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer* empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia *if such confession is found by the trial judge to have been made voluntarily* and if the weight to be given the confession is left to the jury and *if such confession was made or given by such person within six hours* immediately following his arrest or other detention: *Provided, That the time limitation contained in this subsection shall not apply in any case in*

arrest are admissible.[5] Voluntary statements made more than six hours after arrest are also admissible where a judge determines that the delay in arraignment was reasonable. See 18 U.S.C. § 3501(c); *Corley, supra* at 322. Significantly, 18 U.S.C. § 3501(d) states that "[n]othing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person *without interrogation* by anyone . . ." (emphasis added). "Section 3501(d) is designed to ensure that the statute not exclude incriminating statements unconnected with the delay in arraignment." *United States* v. *Colon*, 835 F.2d 27, 30 (2d Cir. 1987), cert. denied, 485 U.S. 980 (1988). Thus, under Federal law, statements that are "spontaneous and not the product of interrogation or its functional equivalent, [are] not excludable under [§] 3501 even if the delay in arraignment was unreasonable." *Id.* at 31. See *United States* v. *Fullwood*, 86 F.3d 27, 31-32 (2d Cir. 1996).

Just as Federal law evolved to accommodate proper information gathering while discouraging prolonged interrogation, so too did analogous law in Pennsylvania. *Commonwealth* v. *Duncan*, 514 Pa. 395, 403-408 (1987) (*Duncan*), overruled by *Perez, supra* at 374. In *Commonwealth* v. *Futch*, 447 Pa. 389, 393-394 (1972) (*Futch*), the Pennsylvania Supreme Court analyzed the question whether information obtained during prearraignment delay was admissible in evidence by evaluating the relationship between the delay and the evidence. See *Commonwealth* v. *Williams*, 455 Pa. 569, 572 (1974) (articulating three-part test). "The *Futch* rule was deliberately made flexible to provide the opportunity for a court to exclude only that evidence which was clearly tainted by the coercive atmosphere of the custodial

<hr>

*which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled* to the nearest available such magistrate judge or other officer" (emphases added).

[5]Although there is no magic in the choice of a six-hour safe harbor, six hours commonly has been used as a benchmark by which to measure the permissible length of questioning prior to arraignment. See, e.g., *Rosario, supra* at 54, citing Uniform Rules of Criminal Procedure, 10 U.L.A. App. (Master ed. 1987); *Commonwealth* v. *Davenport*, 471 Pa. 278, 286, n.7 (1977), overruled by *Perez, supra* at 374, citing National Advisory Commission on Criminal Justice, Corrections § 4.5 (1973).

interrogation." *Duncan, supra* at 404. However, *Futch*'s subjective test proved difficult to administer, and so the Pennsylvania Supreme Court, in *Commonwealth* v. *Davenport*, 471 Pa. 278, 286-287 (1977) (*Davenport*), overruled by *Perez, supra* at 374,[6] adopted a rule whereby any statement obtained after arrest but before arraignment would be excluded from evidence if the defendant was not arraigned within six hours after arrest. The exclusionary rule of *Davenport, supra*, also proved unsatisfactory as it was "rigidly applied in all situations without regard to the purpose of the rule and the evils sought to be avoided by its application." *Duncan, supra* at 406. Thus, in *Duncan, supra*, the Pennsylvania Supreme Court modified *Davenport*'s exclusionary rule to allow for the admission of a defendant's voluntary statements made *within* six hours following arrest, and to exclude only statements made *beyond* the six-hour mark. Our six-hour rule in *Rosario, supra*, found support in Pennsylvania common law as it stood in *Duncan*.

Although the six-hour rule under *Duncan* informed the development of the exclusionary rule in Massachusetts, the rule proved ephemeral in Pennsylvania. In *Perez, supra* at 372-374, the Pennsylvania Supreme Court abandoned its use of a six-hour benchmark and returned to a more flexible, totality of the circumstances test governing the admission of a detainee's statements. In *Perez, supra* at 363, the police procured the defendant's voluntary confession six hours and fifteen minutes after a defendant's arrest where the arrest occurred after court was closed, and then he was arraigned first thing the following morning. Reasoning that "if the accused has not been subjected to coercive tactics, the mere passage of six hours in custody prior to questioning does not taint his confession," the court held that "voluntary statements by an accused, given more than six hours after arrest when the accused has not been arraigned, [were] no longer inadmissible per se." *Id.* at 372-373.

b. *Prompt arraignment law in Massachusetts.* Like its Federal and Pennsylvania counterparts, the law in Massachusetts similarly developed to strike a balance between enforcing the prompt

---

[6]In *Perez, supra* at 373, 374, the Pennsylvania Supreme Court overruled both *Commonwealth* v. *Duncan*, 514 Pa. 395 (1987), and *Commonwealth* v. *Davenport, supra*.

arraignment requirement and allowing the police sufficient opportunity to question an arrestee. As the court recounted, see *ante* at 505, before *Rosario, supra* at 52-54, our experience with the subjective "reasonableness" test to evaluate arraignment delay was that trial judges held differing views on what constituted "reasonable" delay and, consequently, that statements made during interrogations of varying lengths were admitted in evidence. Thus, in an effort to standardize the acceptable length of interrogation and to "eliminate debate over the reasonableness of any delay," we established a bright-line rule in *Rosario* that interrogation of a defendant cannot, absent waiver, exceed six hours.[7] *Id.* at 56. See *Commonwealth* v. *Siny Van Tran*, 460 Mass. 535, 560 (2011). The existence of a waiver reflects the understanding that the statements *Rosario* was intended to suppress are statements elicited during interrogation, rather than statements that are volunteered, without interrogation. Perhaps most tellingly, we stated expressly in *Rosario, supra* at 56, that the six-hour rule applied "*with respect to police questioning of an arrested person*" (emphasis added).

Our subsequent jurisprudence further illustrates that *Rosario* never was intended to apply without regard to its central purpose of preventing improper police questioning or comparable coercive conduct. In *Commonwealth* v. *Morganti*, 455 Mass. 388, 399-400 (2009), for example, we held that *Rosario* does not apply to defendants arrested outside of Massachusetts and, consequently, that statements obtained beyond *Rosario*'s six-hour safe harbor (on account of the interrogating officer's need to fly from Massachusetts to California to conduct the interrogation) were admissible. There, we reasoned that the admission of the defendant's statements did not "violate the spirit" of *Rosario* because "[t]he danger that triggered the need for the rule — that police officers would delay a defendant's arraignment in order to procure a confession from an unrepresented defendant" was not implicated. *Id.* at 399-400. Likewise, in *Commonwealth* v. *Siny Van Tran, supra* at 562-563, we concluded that the six-hour clock was tolled and that statements obtained more than twelve

---

[7]In fashioning the six-hour safe harbor for police questioning, we were well aware that we were embracing a minority position. *Rosario, supra* at 55 n.4. See *Commonwealth* v. *Siny Van Tran*, 460 Mass. 535, 561 n.28 (2011).

hours after the defendant's arrest, where the police waited to interrogate the defendant until he recovered from the effects of "jet lag" following an oversees flight, were admissible. We reasoned that, in waiting to begin the interrogation, the police did "not evince any measure of the principal mischief that the *Rosario* rule was adopted to prevent, namely, the coercive influence of intentional delays of arraignment to prolong custodial interrogation of unwilling and uncounseled arrestees." *Id.* at 563, citing *Rosario, supra* at 57.

Moreover, it is well established that volunteered and unsolicited statements do not implicate the related protections of *Miranda, supra* at 478. See *Commonwealth* v. *Braley*, 449 Mass. 316, 325 (2007); *Commonwealth* v. *Diaz*, 422 Mass. 269, 271 (1996). See also M.S. Brodin & M. Avery, Massachusetts Evidence § 12.6.3, at 677 & n.86 (8th ed. 2007). Accordingly, we have held repeatedly that a defendant's *volunteered* statements — statements that are not the product of police questioning — are admissible.[8] See *Commonwealth* v. *Braley, supra* (volunteered statements admissible notwithstanding *Miranda* errors); *Commonwealth* v. *Koumaris*, 440 Mass. 405, 409 (2007) (conversation initiated by defendant is admissible); *Commonwealth* v. *Diaz, supra*, and sources cited (spontaneous and unprovoked statements are admissible). See also Mass. G. Evid. § 801 (2013) (statements by party opponent are admissible

___

[8]"Volunteered" statements are distinct from "voluntary" statements. See 18 U.S.C. § 3501(d) (2006) (statements given *voluntarily* and *without interrogation* are admissible). "Volunteered" statements are spontaneous and unsolicited, and not the product of police questioning. See *Commonwealth* v. *Diaz*, 422 Mass. 269, 271 (1996). "Voluntary" statements are statements that are "made freely, intelligently, and voluntarily," though they may have been made in response to police questioning. *Commonwealth* v. *Butler*, 423 Mass. 517, 525 (1996). For example, if a person is heavily intoxicated or otherwise mentally impaired and blurts out a statement that is not in response to police questioning, that statement is "volunteered" but may not be "voluntary." See *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586-587 (1984), and cases cited. See also *Commonwealth* v. *Hilton*, 443 Mass. 597, 604-608 (2005) (whether Miranda rights were waived voluntarily and whether defendant's subsequent statements to police were voluntary is distinct inquiry). Here, the defendant did not challenge the voluntariness of his statements in his pretrial motion to suppress, and there is nothing on these facts to indicate that the spontaneous exchange initiated by the defendant was anything but voluntary. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 395 (1997), quoting *Commonwealth* v. *Selby*, 420 Mass. 656, 663 (1995).

nonhearsay). "Spontaneous and unprovoked statements are admissible even if made after a defendant has invoked his right to remain silent." *Commonwealth* v. *Brum,* 438 Mass. 103, 115 (2002). Likewise, *Rosario* does not work to exclude a defendant's spontaneous and unsolicited remarks, which are not the product of police questioning or its functional equivalent.[9] See 18 U.S.C § 3501(d); *United States* v. *Fullwood,* 86 F.3d 27, 31-32 (2d Cir. 1996); *United States* v. *Colon,* 835 F.2d 27, 30 (2d Cir. 1987).

Finally, although not binding on the court, the experience of other jurisdictions is instructive. Both the Federal and Pennsylvania exclusionary rules have been refined over time to advance a principal objective of prompt presentment law: "to prevent unlawful detention and to eliminate the opportunity and incentive for application of improper police pressure." *Rosario, supra* at 51. As stated previously, Pennsylvania's exclusionary rule in *Duncan,* which formed the basis of our own exclusionary rule in *Rosario,* has since been overruled following a determination, in the context of a voluntary confession procured six hours and fifteen minutes after arrest without the use of coercive tactics, that an absolute rule was unworkable. See *Perez, supra* at 374. It is particularly persuasive that Federal law expressly provides for the admission of a defendant's spontaneous statements that are not the product of interrogation, regardless of when they are made. See 18 U.S.C § 3501(d); *United States* v. *Fullwood, supra; United States* v. *Colon, supra.*

For these reasons, I would hold that the defendant's spontaneous and unprovoked hypothetical questions should not be

---

[9]Granted, the protections afforded under *Miranda* v. *Arizona,* 384 U.S. 436 (1966) (*Miranda*), and *Rosario* are not interchangeable, see *Commonwealth* v. *Siny Van Tran, supra* at 561, and we have stated that the rule requiring prompt arraignment, "*recognizing the coercive nature of a lengthy interrogation,* provides the court with an additional assurance (over and above the assurance supplied by compliance with the requirements of *Miranda* . . .) that statements made by the defendant after arrest but before presentment are free, intelligent, and voluntary" (emphasis added). *Commonwealth* v. *Butler, supra* at 523. Such "additional assurance" is the guarantee that an arrestee will not be questioned for longer than six hours, absent waiver of the right to a prompt arraignment. Therefore, I regard the related protections afforded under *Miranda* as instructive, particularly where, as here, a defendant spontaneously offers information relevant to a criminal investigation in the absence of coercive conduct on the part of the police.

excluded under *Rosario.*[10] Unsolicited and volunteered statements like the defendant's hypothetical questions are not the product of the improper questioning *Rosario* was intended to deter. See *Rosario, supra* at 58. See also *Perez, supra* at 376-377; *Duncan, supra* at 407.

I would not go as far as the Pennsylvania Supreme Court in *Perez, supra* at 372-374, which, as stated previously, abandoned its six-hour rule completely. Like the court in *Duncan, supra,* I believe that "the underlying purposes of the [exclusionary] rule would not be served by the elimination of an objective standard with which to measure unnecessary delay." I would hold only that unsolicited, volunteered statements that are made outside the six-hour window, which are not a result of police questioning or other coercive conduct, are not subject to suppression pursuant to *Rosario.* Such a rule "avoid[s] the mechanical application of the [exclusionary] rule in a manner that works to exclude probative, reliable evidence despite the absence of police abuse." *Duncan, supra.* See *Commonwealth* v. *Siny Van Tran, supra.* Such a rule is "consistent with the premise . . . that police and prosecutors should be explicitly informed what they are, and are not, authorized to do." *Rosario, supra* at 55, quoting Model Code of Pre-Arraignment Procedure, Commentary on § 130.2, at 334 (Proposed Official Draft 1975). See *Rosario, supra* at 59 (Liacos, C.J., dissenting). Police officers and prosecutors are permitted to question an arrestee within six hours after arrest, absent exceptional circumstances wherein the six-hour clock is tolled (in which case, questioning should not exceed six hours). *Commonwealth* v. *Morganti, supra* at 400. They are not permitted to question an arrestee after the six-hour mark (or for longer than six hours, in the case of tolling), unless they obtain a waiver of a defendant's right to a prompt arraignment. If the police question an arrestee after the six-hour mark without obtaining a waiver, any statements obtained will be excluded from evidence. Thus, there would remain a bright-line, "outside limit on any incentive to question an unwilling

---

[10]I would also conclude that unsolicited statements made outside the six-hour window to a person who is not a police officer, such as a cellmate or a person the defendant calls on the telephone from the police station, are not barred from admission under *Rosario.*

arrestee." *Rosario, supra* at 56. Providing for the admission of a defendant's unsolicited and volunteered statements — statements over which only the defendant exercises control — would not impact the conduct of police officers or prosecutors.