COMMONWEALTH *vs.* ERROL POWELL.[1]

Bristol. February 6, 2014. - June 6, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Constitutional Law,* Admissions and confessions, Delay in commencement of prosecution. *Due Process of Law,* Delay in commencement of prosecution. *Practice, Criminal,* Admissions and confessions, Arraignment, Delay in commencement of prosecution, Motion to suppress. *Evidence,* Admissions and confessions.

This court remained of the view that the rule established in *Commonwealth* v. *Rosario,* 422 Mass. 48, 56 (1996), which renders inadmissible custodial statements made more than six hours after arrest and before being brought to court for arraignment (a term that is the equivalent of "initial appearance"), continues to achieve a just balancing of interests and to serve important goals of the criminal justice system within the Commonwealth (i.e., predictability and consistency), and declined to adopt an approach (taken by the majority of States) that employs a totality of the circumstances test to assess whether a delay between arrest and presentment was reasonable. [275-282]

A Superior Court judge properly granted the criminal defendant's pretrial motion to suppress inculpatory statements regarding a murder that were made during an interrogation that took place approximately nine hours after his arrest on another charge, where the rule established in *Commonwealth* v. *Rosario,* 422 Mass. 48, 56 (1996), which renders inadmissible custodial statements made more than six hours after arrest and before being brought to court for arraignment, is not charge-specific [282-283]; and where the emergency exception to the rule was not applicable, in that it was neither impossible nor even impractical for the police to interrogate the defendant within six hours of arrest [283-285].

INDICTMENTS found and returned in the Superior Court Department on August 19, 2010.

A pretrial motion to suppress evidence was heard by *John P. Connor, Jr.,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Botsford,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her.

---

[1] As is our custom, we spell the defendant's name as it appears in the indictments.

*Roger L. Michel, Jr.*, Assistant District Attorney, for the Commonwealth.

*Richard B. Klibaner* for the defendant.

CORDY, J. The defendant in this case has been charged with murder in the first degree and other crimes arising out of the shooting of Jonathan Nieves, who was mistaken for a member of a rival gang, on or about February 26, 2010. The defendant was interrogated by police following his arrest and after being held for approximately nine hours in the Fall River police station while awaiting his initial appearance in the local District Court. During that interrogation, he made several inculpatory statements. Those statements were subsequently suppressed as violative of the rule we established in *Commonwealth* v. *Rosario*, 422 Mass. 48, 56 (1996), which renders inadmissible custodial statements made more than six hours after arrest and before being brought to court for arraignment.[2] The Commonwealth asks us to revisit the *Rosario* rule. Because we are of the view that the rule continues to serve as an important and practical protection of the constitutional and common-law rights of persons arrested for violations of the criminal laws, we decline to do so. Accordingly, we affirm the allowance of the defendant's motion to suppress.[3]

*Background.* We consider the facts as set forth in the motion judge's findings after an evidentiary hearing, at which four police officers testified, supplemented by uncontroverted facts in the record that were implicitly credited by the motion judge. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007), *S.C.*, 450 Mass. 818 (2008).

On February, 26, 2010, or in the early morning hours of the following day, Jonathan Nieves was shot to death in his motor vehicle when he was mistaken for a gang member, "PZ," who was suspected of killing a member of the Mafiosa Street gang,

---

[2]Although the rule of *Commonwealth* v. *Rosario*, 422 Mass. 48, 56 (1996), speaks in terms of "arraignment," that term is the equivalent of "initial appearance" in this context. It is irrelevant that arraignments do not always happen at the initial appearance where counsel is often appointed and bail is set.

[3]Because we decide the case on this ground, we need not address the defendant's alternative argument that his statements should be suppressed because he was not adequately advised of his right to have an attorney present before and during questioning. See *Miranda* v. *Arizona*, 384 U.S. 436, 444-445 (1966).

to which the defendant belonged. That night, the defendant was informed by a female friend that PZ was at a night club in Fall River. The friend, who was accompanied by the defendant's girl friend, had mistaken Nieves for PZ. The two women followed Nieves in a motor vehicle when he drove away from the night club and kept the defendant, who was driving a motor vehicle owned by his neighbor, apprised of his location. A short time later, the women heard shots in the area where Nieves had parked. The defendant returned his neighbor's motor vehicle sometime after 2:30 A.M. on February 27.

After obtaining more information about what had occurred that evening, the police arrested the defendant at 1:30 P.M. on June 14, 2010, on the charge of larceny of the neighbor's motor vehicle.[4] Although the police apparently had probable cause to arrest the defendant for murder, they did not obtain an arrest warrant for that charge, because they had not yet been authorized to do so by the district attorney. The defendant was placed in a cell at the police station at approximately 2:45 P.M. and was held there until 11:45 P.M., when a State trooper went to retrieve him for an interview and found him partially asleep. The State trooper and a Fall River police officer thereafter interviewed the defendant for two hours. The defendant was alert and cooperative but yawned throughout the interview. After providing a Miranda waiver at the beginning of the interview, the defendant began to talk about the motor vehicle larceny charge. The officers indicated that they were interested in discussing the murder of Nieves and that they believed that the defendant was the perpetrator. During the course of the interrogation that followed, the defendant admitted to shooting Nieves and made further inculpatory statements. Two months later, the defendant was indicted on charges of assault and battery by means of a dangerous weapon, unlawful possession of a firearm, armed assault with intent to murder, and murder in the first degree.

The defendant thereafter moved to suppress the statements he made during the interview, alleging that the Miranda warnings given to him were defective, and that he had not promptly been brought before the court as required by Mass. R. Crim. P.

---

[4]They also arrested the defendant's girl friend at 2 P.M. that day on the charge of accessory after the fact to the murder of Jonathan Nieves.

7 (a) (1), as appearing in 461 Mass. 1501 (2012), such that the *Rosario* rule applied to exclude his statements. A Superior Court judge granted the defendant's motion on the ground that the *Rosario* rule applied where the defendant was not interrogated within six hours of his arrest, no exception applied to permit the delay, and the defendant had not signed a waiver of his right to be brought promptly into court. A single justice of this court allowed the Commonwealth's application for leave to proceed with an interlocutory appeal to this court.

*Discussion.* The Commonwealth makes two primary arguments in support of its assertion that the motion judge's ruling must be reversed. First, it argues that the *Rosario* rule governing the admissibility of inculpatory statements made prior to arraignment is no longer an appropriate mechanism for such determinations, and that this court should instead adopt the totality of the circumstances test employed by the majority of States. Second, the Commonwealth asserts that, even if the rule remains in place, the rule does not bar the admission of the defendant's statements here because the six-hour clock begins anew with each criminal charge, and it had only begun to run as to the motor vehicle larceny offense and not the murder-related offenses of which he was not then charged. The Commonwealth also contends that the *Rosario* rule does not bar the admission because the emergency exception to the rule should apply.

1. *Propriety of* Rosario *safe harbor rule.*[5] Police are required to bring an arrestee before a court as soon as is reasonably possible. See Mass. R. Crim. P. 7 (a) (1). In *Rosario*, 422 Mass. at 56, this court introduced a bright-line rule that defines reasonable delay for the purposes of admissibility of custodial statements made while awaiting arraignment in court. The *Rosario* rule provides that "[a]n otherwise admissible statement is not to

---

[5]The defendant asserts that the Commonwealth's over-all challenge to the propriety of the *Rosario* rule has been waived, as it was not raised below. The Commonwealth's argument before the motion judge and in its application for leave to proceed with an interlocutory appeal focused on the question whether the *Rosario* rule is charge-specific. See part 2.a, *infra.* The Commonwealth's over-all challenge to the *Rosario* rule is essentially an extension of its assertion that the *Rosario* rule is limited in scope. Consideration of this claim does not change the outcome of our decision. We therefore do not consider the argument waived. See *Commonwealth* v. *Sheehy*, 412 Mass. 235, 237 n.2 (1992). Contrast *Commonwealth* v. *Bettencourt*, 447 Mass. 631, 633-634 (2006).

be excluded on the ground of unreasonable delay in arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay."[6] *Id.* Statements made after the six-hour period following arrest are inadmissible, unless the defendant has waived the right to be promptly brought before the court or, in very rare circumstances, if an exception applies. *Id.* at 56-57.

The Commonwealth asks us to depart from this rule because it is inflexible and does not advance the interests of the justice system or serve the values it was intended to promote. In addition, the Commonwealth contends that the authorities the court relied on in *Rosario* no longer support the utility of the rule, that our subsequent decisions applying *Rosario* suggest that we have already departed from the bright-line rule, and that a totality of the circumstances test would provide a more fitting case-by-case analysis. The defendant asserts that *Rosario* continues to serve its purposes of preventing unlawful detention and improper police pressure to elicit confessions. We agree with the defendant that there is no reason to depart from the *Rosario* rule, particularly on the facts of this case.

The *Rosario* rule is rooted in the rule of prompt presentment, Mass. R. Crim. P. 7 (a) (1), which provides that "[a] defendant who has been arrested and is not released shall be brought for arraignment before a court if then in session, and if not, at its next session." See *Commonwealth* v. *Butler*, 423 Mass. 517, 523 (1996). Although the right to prompt presentment is not itself a constitutional one, it serves to protect several constitutional rights afforded to criminal defendants, or at a minimum to inform them of these rights, including the rights to counsel, to be informed of the charges by a member of the judiciary, to reasonable bail, and not to be detained unlawfully. See *Commonwealth* v. *Fortunato*, 466 Mass. 500, 505 & n.7, 506 (2013);

---

[6] Although a delay of fewer than six hours may not be the basis for exclusion of a prearraignment statement, there may be other reasons to exclude it, such as if the statement was not made voluntarily. See *Commonwealth* v. *Tremblay*, 460 Mass. 199, 206 (2011) ("It is well established that a confession or an admission is admissible in evidence only if it is made voluntarily").

*Butler, supra.* See also *Corley* v. *United States*, 556 U.S. 303, 320 (2009); *Commonwealth* v. *Duncan*, 514 Pa. 395, 402-403 (1987), overruled by *Commonwealth* v. *Perez*, 577 Pa. 360 (2004).

Given the rights that attach when a defendant is brought before the court, there is a very real concern that police will delay in presenting an arrestee for arraignment in order to obtain a confession or other inculpatory statements from the arrestee before he or she receives representation. See *Commonwealth* v. *Morganti*, 455 Mass. 388, 399-400 (2009), *S.C.*, 467 Mass. 96 (2014). Delays in presentment thus create both "opportunity and incentive for application of improper police pressure." *Rosario*, 422 Mass. at 51. In light of these concerns, we have historically considered delay in presentment in relation to the admissibility of statements made during prearraignment interrogations. See *Commonwealth* v. *Martinez*, 458 Mass. 684, 694 (2011). Other jurisdictions have similarly looked to their own prompt presentment requirements and implemented rules or standards intended "to discourage the obtaining of incriminatory information through coercive means," see *Commonwealth* v. *Jenkins*, 500 Pa. 144, 150 (1982), and "to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." *Duncan*, 514 Pa. at 404, quoting *Commonwealth* v. *Davenport*, 471 Pa. 278, 284 (1977), overruled by *Perez*, 577 Pa. 360. See *Corley*, 556 U.S. at 306-307, 320.

Prior to *Rosario*, we employed a totality of the circumstances test to assess whether a delay between arrest and presentment was reasonable and therefore whether statements made during that delay were admissible. See *Commonwealth* v. *Beland*, 436 Mass. 273, 282-283 (2002). See also *Rosario*, 422 Mass. at 51-52, and cases cited. This is the approach taken by most jurisdictions. See generally Annot., Admissibility of confession or other statement made by defendant as affected by delay in arraignment — modern state cases, 28 A.L.R. 4th 1121 (1984 & Supp. 2013). See also *White* v. *State*, 76 So. 3d 335, 338-339, 341 (Fla. Dist. Ct. App. 2011), and cases cited (most States do not have "blanket rule[s] mandating suppression"); *People* v. *Cipriano*, 431 Mich. 315, 324 (1988), and cases cited ("Under

the view adopted in most states, a confession obtained from a suspect in violation of his statutory right to prompt arraignment is not ipso facto inadmissible; rather, arraignment delay is taken into account as one relevant factor in evaluating the overall voluntariness of the confession [footnote omitted]"); *Perez*, 577 Pa. at 368-370. The totality of the circumstances standard, as we observed in *Rosario*, had not led to suppression (due to unreasonable delay) in any Massachusetts case. See *Rosario*, *supra* at 52.

In *Rosario*, 422 Mass. at 56, we departed from the totality test and adopted a bright-line rule regarding the admissibility of prearraignment statements, "creating a [six-hour] safe harbor for the interrogation of arrested individuals prior to arraignment." *Martinez*, 458 Mass. at 694. Our rule was modeled after those in Federal practice[7] and in Pennsylvania, both of which had replaced fact-specific assessments of the reasonableness of delay with bright-line definitions in the decades prior to *Rosario*.[8] See *Rosario*, *supra* at 54-56. From the 1970s to 2004, Pennsylvania employed a bright-line rule very similar to ours. Any

---

[7]Under Federal law, "a voluntary confession, made by a person within six hours following arrest or other detention, 'shall not be inadmissible solely because of delay in bringing such person before a magistrate.' " *Rosario*, 422 Mass. at 55, quoting 18 U.S.C. § 3501(c) (1968). Like the *Rosario* rule, § 3501(c) therefore "provide[s] immunization to voluntary confessions given within six hours of a suspect's arrest." *Corley* v. *United States*, 556 U.S. 303, 311 (2009). However, prearraignment statements made beyond six hours are not per se inadmissible. Rather, a court must employ the *McNabb-Mallory* totality test to determine "whether delaying that long was unreasonable or unnecessary" in light of the prompt presentment requirement of Fed. R. Crim. P. 5(a). *Corley*, *supra* at 308-309, 322. See *Mallory* v. *United States*, 354 U.S. 449, 451-452 (1957); *McNabb* v. *United States*, 318 U.S. 332, 342-344 (1943). If the delay was unreasonable, the confession is suppressed. *Corley*, *supra* at 322. Thus, the Federal rule represents a hybrid of our bright-line approach and the totality test used in most other States.

[8]Two sets of model rules also advocated for bright-line rules on the admissibility of prearraignment statements. The Uniform Rules of Criminal Procedure "provide[d] that a 'detained or arrested' individual must be brought before a magistrate within six hours (excluding any time between 6 P.M. and 7 A.M.), barring extraordinary circumstances." *Rosario*, 422 Mass. at 54, quoting Unif. R. Crim. P. 311, 10 U.L.A. App. (Master ed. 1987). The American Law Institute's Model Code of Pre-Arraignment Procedure similarly articulated a specific time limit on delay, in order to provide clarity to police officers on the extent of a reasonable delay. See *Rosario*, *supra* at 54-55, citing Model Code of Pre-Arraignment Procedure § 140.8(4) (Proposed Official Draft 1975).

prearraignment statements made after a six-hour period following arrest were per se inadmissible. See *Duncan,* 514 Pa. at 406; *Davenport,* 471 Pa. at 286-287. In 2004, the Supreme Court of Pennsylvania returned to a totality of the circumstances test. See *Perez,* 577 Pa. at 373-374. See also *Commonwealth* v. *Sepulveda,* 579 Pa. 217, 233 (2004), cert. denied, 546 U.S. 1169 (2006). In doing so, it observed that the Pennsylvania courts had permitted so many exceptions to the six-hour rule that the rule had effectively become toothless. See *Perez, supra,* at 368, 371. The court determined that the "[a]pplication of a stringent bright-line rule . . . [had] yielded perplexing results" in light of "vastly different sets of circumstances," and that a totality test would be more appropriate and effective than a bright-line rule. *Id.* at 368, 373, and cases cited.

We have long recognized, even since Pennsylvania's shift, that we are a minority in this area among the States. See *Fortunato,* 466 Mass. at 518 n.7; *Commonwealth* v. *Siny Van Tran,* 460 Mass. 535, 561 n.28 (2011) (acknowledging *Perez* and recognizing minority status); *Rosario,* 422 Mass. at 55 n.4 (recognizing that most States rejected bright-line approach in favor of multifactorial test). However, we remain of the view that our rule of exclusion continues to achieve a just balancing of interests and to serve important goals of the criminal justice system within the Commonwealth. We decline to follow suit with Pennsylvania and join the majority approach.

A bright-line rule, like the totality test, achieves the goal of limiting the coercive effect of lengthy arraignment delays by barring the admission of statements resulting from unreasonable delay. See *Siny Van Tran,* 460 Mass. at 561, 563 (*Rosario* rule is "prophylaxis against dilatory police conduct" designed to curtail "coercive influence of intentional delays"); *Rosario,* 422 Mass. at 51 (rule designed to "prevent unlawful detention and . . . eliminate the opportunity and incentive for application of improper police pressure"). Cf. *Miranda* v. *Arizona,* 384 U.S. 436, 444-445 (1966) (establishing prophylactic mechanism to safeguard privilege against self-incrimination from coercive atmosphere of custodial interrogation). Although bright-line rules, in presetting the balance of interests, can result in both over- and underprotection of the rights of criminal defendants

and the public interest served by police interrogations, such rules can achieve a fair and adequate balance of these interests while serving additional goals within the criminal justice system.[9] Cf. *Commonwealth* v. *Simon*, 456 Mass. 280, 294, cert. denied, 131 S. Ct. 181 (2010) (adopting bright-line rule in *Miranda* context even though rule "may admittedly invite disputes," and noting that bright-line rules are necessary to avoid fact-intensive inquiries in certain contexts). Our rule serves two such goals that cannot be achieved by a totality test: predictability and consistency. See *Perez*, 577 Pa. at 374; *Duncan*, 514 Pa. at 405; *Davenport*, 471 Pa. at 287.

Predictability is an asset to law enforcement, criminal defendants, prosecutors, judges, and others. See *Morganti*, 455 Mass. at 399. See also *Fortunato*, 466 Mass. at 505 (*Rosario* "rule sets out an unambiguous temporal boundary line to demarcate when an arrested defendant's otherwise voluntary statements will be admissible, and when they will not"); Schlag, Rules and Standards, 33 UCLA L. Rev. 379, 384, 387, 400 (1985). Given that suspects may be arrested on any day of the week and at any time of day or night, in any location, and under myriad circumstances, setting a clear six-hour limit from the time of arrest provides specific guidance to police officers so that they can plan accordingly and know that, within the six-hour period, any delay will not be considered unreasonable. This is, indeed, a "safe harbor" for the Commonwealth. See *Siny Van Tran*, 460 Mass. at 560. Beyond that six-hour limit, the rule ensures that criminal defendants will not be held for an unreasonably lengthy period without the benefit of the rights afforded to them under our Constitution, our common law, and our rules of criminal procedure. In this respect, it is a safe harbor for the defendant.

A bright-line rule also ensures fairness and consistency by

---

[9]Most bright-line rules result in both overprotection and underprotection to varying extents. Cf. Klein, Identifying and (Re)formulating Prophylactic Rules, Safe Harbors, and Incidental Rights in Constitutional Criminal Procedure, 99 Mich. L. Rev. 1030, 1033, 1036 (2001); Schlag, Rules and Standards, 33 UCLA L. Rev. 379, 384-385 (1985). There may be some instances where a delay of less than six hours would otherwise be unreasonable, and others where a delay of more than six hours would otherwise be reasonable. The benefits of consistency and predictability, and the system-level balancing the bright-line rule achieves, however, outweigh this risk.

minimizing the variability that can result from the application of a totality test. See *Morganti*, 455 Mass. at 399; *Rosario*, 422 Mass. at 56. We adopted the *Rosario* rule out of concern that different "judges have different views on the reasonableness of a delay in arraignment knowingly undertaken in order to question a defendant," *Rosario, supra* at 53-54, and with the goal of minimizing "the uneven application of the reasonableness standard." *Morganti, supra.* As a result, the *Rosario* rule "provide[s] for more effective implementation of a defendant's right to prompt arraignment or presentment and the additional rights that prompt presentment protects" (footnotes omitted). *Fortunato*, 466 Mass. at 504-505. Indeed, bright-line rules have been recognized as effective mechanisms for restricting judicial discretion in order to protect individual rights. See Scalia, The Rule of Law as a Law of Rules, 56 U. Chi. L. Rev. 1175, 1180, 1187 (1989).

Although other States have reached a different conclusion, we continue to consider time elapsed between arrest and arraignment to be a determinative factor in admissibility. Unlike the jurisprudence that led to the demise of the bright-line rule in Pennsylvania, see *Perez*, 577 Pa. at 368-371, we have not carved out myriad exceptions to this rule, but have instead stood by our unambiguous demarcation.[10] See *Fortunato*, 466 Mass. at 504-505. In asking this court to depart from the *Rosario* rule, the Commonwealth has not proffered any evidence suggesting that the six-hour mark does not accurately reflect the point at which a delay shifts from reasonable to unreasonable, except to assert that it is impossible to pinpoint a time and apply it to all cases. Our selection of six hours was based, as noted above, in criminal justice research, model rules, and the assessments of the Federal and Pennsylvania courts. See *Rosario*, 422 Mass. at 54-56. See also *Duncan*, 514 Pa. at 406 ("delay of six hours between arrest and arraignment is an acceptable period of time to accommodate conflicting interests without creating such a coercive effect so as to violate the rights of an accused"); note

---

[10]Contrary to the Commonwealth's suggestion, our decisions in *Commonwealth* v. *Morganti*, 455 Mass. 388 (2009), and *Commonwealth* v. *Siny Van Tran*, 460 Mass. 535 (2011), do not represent a covert return to the totality test. We discuss *Morganti* and *Siny Van Tran, infra.*

9, *supra*. Absent evidence that a delay becomes coercive and unreasonable at a different point, we need not disturb our determination in *Rosario*, 422 Mass. at 56, that after six hours, regardless of the time of day or the availability of a magistrate, the Commonwealth should not stand to benefit from the fruits of that delay at trial. Our rule enables police to understand their limits before they begin investigatory measures, ensures protection for defendants' rights, and sets a universal standard to produce consistently fair results.[11]

2. *Application of* Rosario *rule*. We turn next to the Commonwealth's assertions that the *Rosario* rule does not bar the admission of the defendant's statements, even though they were made more than six hours after his arrest and in the absence of a *Rosario* waiver. We are not persuaded by either of the Commonwealth's claims.

a. *Subsequent charges*. The Commonwealth contends that the six-hour safe harbor period is charge-specific, such that even when a defendant is charged with a crime and subsequently interrogated, the clock is not running if the defendant is questioned about another crime on which he has not yet been charged or arrested. It asserts that because the defendant was interviewed before he had been charged with the murder (and related charges) at issue here, the six-hour clock had not yet begun to run as to any statements he made about them. The motion judge rejected this argument because he identified no existing legal authority indicating that the six-hour period would be reset by a subsequent charge.[12,13] We agree with the motion judge's conclusion that the fact that the defendant had not yet been charged with murder

---

[11]The *Rosario* rule speaks only to the admissibility of statements made during interrogations that occur prior to arraignment. It does not, for example, prohibit the Commonwealth from proceeding with a criminal prosecution where a defendant was not arraigned within six hours of arrest.

[12]He further reasoned that the statements were inadmissible because the defendant "had been under arrest for about nine hours and [the police] chose to wait until around 11:30 at night when he was lying in his bunk half asleep before they chose [to interrogate him]."

[13]The six-hour rule previously employed by the Supreme Court of Pennsylvania, since replaced by a totality of the circumstances test, was offense-specific, meaning that "the arrest of a suspect for one criminal offense [did] not commence the six-hour period for questioning regarding a separate criminal offense" (citation omitted). *Commonwealth* v. *Perez*, 577 Pa. 360,

does not serve to extend the safe harbor period here. Absent extraordinary circumstances, the six-hour safe harbor period under *Rosario* begins when a defendant is arrested. See *Commonwealth* v. *Morales*, 461 Mass. 765, 778 (2012); *Martinez*, 458 Mass. at 694-695.[14]

b. *Emergency exception*. The Commonwealth next asserts that the emergency exception to the *Rosario* rule applies here to permit the admissibility of the defendant's confession. It contends that there was a public safety necessity for questioning the defendant about the ongoing and "rapidly unfolding" murder investigation while he was detained on the larceny charge, and that because this emergency was not attributable to the police, the six-hour clock should have been tolled. The motion judge could identify no basis for invoking the emergency exception in *Rosario*. We agree that the exception does not apply here.

In *Rosario*, 422 Mass. at 57, we recognized that there may be exigent circumstances in which it is appropriate to toll the six-hour period. "[I]f for reasons not attributable to the police, such as a natural disaster or emergency, interrogation during the six-hour period is not possible or must be suspended, the six-hour period should be tolled appropriately." *Id*. We have only once had occasion to invoke this exception to permit the tolling of the six-hour period, in a case whose facts are vastly different

368 (2004). See *Commonwealth* v. *Bond*, 539 Pa. 299, 308 (1995). In our own case law, we have not yet addressed the question whether the rule is offense-specific.

[14]We need not decide whether the six-hour clock would begin at the time of the initial arrest or on the filing of subsequent charges in a truly unfolding investigatory situation. Here, the police had probable cause to arrest the defendant for murder, but instead sought a warrant for larceny of a motor vehicle, a crime related to the murder, with the intent to interrogate the defendant about the murder. The delay in the defendant's arrest and arraignment on the murder charge was not the result of a lack of probable cause to arrest. Cf. *Commonwealth* v. *Ortiz*, 422 Mass. 64, 69 (1996) (where probable cause supports arrest, no distinction between police questioning on charged crimes and crimes for which no complaint has yet issued). The Commonwealth concedes that the officers did not question the defendant about the larceny at all; from the beginning they focused on his involvement in the murder, despite his belief that they wished to speak with him about the charge for which he was arrested. This is the type of manipulation the *Rosario* rule is designed to eliminate. In this case, the six-hour clock began to run at the moment the defendant was arrested, and expired prior to his interrogation by the police.

from those at hand. See *Siny Van Tran*, 460 Mass. at 562.[15] In *Siny Van Tran*, the defendant was extradited from Hong Kong and charged with murdering five men in Boston ten years prior. *Id.* at 536-537. He was brought to Boston by Federal agents at 11 P.M. on a Friday night following a flight from China with layovers in San Francisco and Washington, D.C. *Id.* at 562. The police had no control over the timing of the defendant's arrival in Boston, and they "did not attempt to interview [the] defendant that night because [he] appeared to be suffering from the effects of 'jet lag.' " *Id.* at 556-557. Around noon the following day, the police interviewed him with the assistance of a translator. *Id.* at 557. We concluded that the exceptional circumstances "rendered it extremely impractical, if not impossible, to conduct an interrogation within six hours of arrest." *Id.* at 562. Rather, given the likelihood that the defendant's "will might be overborne by his exhaustion or incapacity at [the] late hour" of his arrival after a long journey, it was appropriate for the police to delay their interrogation. *Id.* Therefore, we concluded that the exception to the *Rosario* rule was applicable and held that there was no prejudicial error in the denial of the defendant's motion to suppress. *Id.* at 560-563.

Here, it was neither impossible nor even impractical for the police to interrogate the defendant within six hours of arrest. The defendant was arrested during business hours, at a time presumably chosen by the police, in the city in which the defendant lived and the crimes had occurred. Although the defendant was arrested at approximately 1:30 P.M., he was not interrogated until approximately 11:45 P.M. Even if the court had not been open at the time of the defendant's arrest (which it plainly was), we have made clear that whether the court is in session is immaterial to the calculation of the six-hour period. See *Siny Van*

---

[15]In *Morganti*, a case the Commonwealth cites as another example of the application of the emergency exception, we determined that the *Rosario* rule did not govern because the rule does not "apply to persons arrested in other States on warrants issued in Massachusetts, whose arraignment would need to await their rendition to Massachusetts." *Morganti*, 455 Mass. at 399. Accordingly, we did not apply the bright-line rule and instead considered the "spirit" of the rule, looking to the circumstances of the interrogation. *Id.* at 399-400. *Morganti* therefore does not illustrate the application of an exception to the *Rosario* rule.

*Tran,* 460 Mass. at 561, 562 n.29 (consideration of availability of magistrate would enable coercive strategies rule intends to prevent); *Rosario,* 442 Mass. at 54, 57.[16] We cannot say that the delay here was not attributable to the police officers' own management of the case. Absent any other indication of highly unusual circumstances causing delay in interrogation and arraignment, we decline to apply the emergency exception here. See *Rosario, supra* at 56-57.

*Conclusion.* Because the defendant's statements were made more than six hours after his arrest and before his arraignment, and he did not waive his right to be promptly presented to the court, the motion to suppress his statements was properly granted in accordance with our interpretation of the *Rosario* rule. The allowance of the defendant's motion to suppress is affirmed.

*So ordered.*

---

[16]Even if the availability of a magistrate were germane to our analysis, we would not be persuaded that a magistrate was unavailable here. The defendant was arrested at 1:30 P.M. on a weekday and was held less than one mile from the court house.